WILLIAM PRYOR, Circuit Judge:
We must decide in this appeal whether a district court erred when it denied a motion to compel arbitration even though *1309 the parties expressly stated that the rules of the American Arbitration Association governed their arbitration agreement. Cyanotech Corporation, a company that develops natural products made with microalgae, moved to compel arbitration after Valensa, its competitor, sued Cyanotech for tortious interference with contract and breach of a confidentiality agreement. Cyanotech argued that Va-lensa had to arbitrate, not litigate, those allegations based on arbitration provisions contained in two contracts between the parties. But the district court denied that motion. Because the parties clearly and unmistakably incorporated the rules of the Association into their arbitration provisions, the district court erred when it refused to allow an arbitrator to decide whether their dispute is arbitrable under one of the parties’ contracts. See Terminix Int’l Co. v. Palmer Ranch Ltd. P’ship, 432 F.3d 1327, 1332 (11th Cir. 2005). We reverse and remand for the district court to compel arbitration.
I. BACKGROUND
Valensa and Cyanotech entered into two contracts, in which they agreed that Cya-notech would sell a species of algae called Haematococcus pluvialis to Valensa. Va-lensa used that algae to extract an antioxidant compound, astaxanthin, which is a central ingredient of its nutritional supplements. On November 2, 2007, the two entered into the first contract, which was effective through November 2, 2010. Then on November 1, 2010, they entered into the second contract, which was effective through December 31, 2012.
Both contracts contained nearly identical confidentiality provisions that forbade either party from disclosing confidential and proprietary information without the other party’s consent. But the confidentiality provision in the 2010 contract added an additional provision, which allowed a party to litigate any breach of the confidentiality agreement:
Each Party to this Agreement recognizes that disclosure of the other Party’s confidential and proprietary information may cause irreparable damage to the non-disclosing Party. Unauthorized disclosure of a Party’s confidential information shall constitute a material breach of this Agreement and is cause for termination of the Agreement by the non-disclosing Party. The non-disclosing Party may seek all remedies available by law, including injunctive relief, and may pursue any such action in a court of competent jurisdiction....
Both contracts also contained arbitration provisions that required the arbitration of certain disputes under the rules of the Association, but these arbitration provisions differed in one significant respect. The arbitration provision in the 2007 contract mandated the arbitration of any dispute that arose under that contract:
The parties agree to resolve any dispute, controversy or claim that arises hereunder through good faith discussions and written correspondence, each in good faith attempting to understand the other’s position and to resolve the matter amicably. If thereafter, a party at its sole discretion determines that any such dispute cannot thus be resolved, such dispute shall be subject to binding arbitration in Los Angeles, CA under the auspices and rules of the American Arbitration Association by a single arbitrator.
But the arbitration provision in the 2010 contract contained a carve-out for any dispute that related to the breach of confidentiality provision:
The Parties agree to resolve any dispute, controversy or claim that arises hereunder through good faith discus *1310 sions and written correspondence, each in good faith attempting to understand the other’s position and to resolve the matter amicably. If thereafter, a Party at its sole discretion determines that any such dispute cannot be so resolved, the dispute, other than a dispute relating to breach of the confidentiality provision of this Agreement, shall be subject to final and binding, arbitration by a single arbitrator in the State of Washington under the auspices and rules of the American Arbitration Association.
At some point after Cyanotech and Valensa executed the first contract, but before executing the second, Valensa initiated another lucrative business relationship with a third company, Mercóla. In October 2010, the chief executive officer of Valensa and a principal of Mercóla appeared together in YouTube videos that discussed nutritional supplements. That same month, Valensa and Mercóla announced a licensing and supply agreement for a health product containing as-taxanthin. Valensa then began supplying Mercóla with a different astaxanthin product containing another ingredient, perilla, in March 2011.
Cyanotech also had dealings with Mer-cóla. In September 2010, the Vice President of Sales and Marketing at Cyanotech sent an email to Mercóla discussing its microalgae products, including astaxan-thin. He offered to supply astaxanthin to Mercóla and sent “a care package with samples and literature”- to Mercóla.
In February 2012, Mercóla informed Va-lensa that it planned to end its relationship with Valensa and would instead purchase the astaxanthin product directly from Cya-notech. Mercóla explained that Cyanotech offered lower prices, and Valensa now contends that Cyanotech approached Mercóla and offered Mercóla discounted prices if it purchased directly from Cyanotech. Va-lensa sent a letter to Cyanotech and requested that Cyanotech cease any business dealings with Mercóla. When Cyanotech failed to do so, Valensa sued Cyanotech in federal court.
Valensa’s complaint alleged two causes of action against Cyanotech: tortious interference with its business relationship with Mercóla and breach of the confidentiality agreement in the 2010 contract. The complaint alleged that Cyanotech interfered with the Valensa-Mercola relationship by coaxing Mercóla to buy directly from Cyanotech after Cyanotech revealed confidential information that it had learned during its dealings with Va-lensa. Although the complaint alleged that Cyanotech and Valensa had a business relationship beginning in 2007, it referenced only the 2010 contract and not the 2007 contract.
Cyanotech moved to compel arbitration, but the district court denied that motion. Cyanotech filed a reply brief supporting its motion to compel arbitration, in which Cyanotech cited our precedent in Terminix International Co. But in its order denying the motion to compel arbitration, the district court failed to acknowledge that precedent and reasoned that the carve-out in the 2010 arbitration provision exempted Valensa from arbitrating its dispute.
II. STANDARD OF REVIEW
We review de novo the denial of a motion to compel arbitration by a district court. Bess v. Check Express, 294 F.3d 1298, 1302 (11th Cir.2002).
III. DISCUSSION
We agree with Cyanotech that the district court should have sent this dispute to arbitration for an arbitrator to decide the question of arbitrability. “[A]r- *1311 bitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit their grievances to arbitration.” AT & T Tech., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 648-49, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). “[A]rbitration is a matter of contract,” United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), and ordinarily, “the question of arbitrability ... is undeniably an issue for judicial determination[ ] [ujnless the parties clearly and unmistakably provide otherwise.... ” AT & T Tech., Inc., 475 U.S. at 649, 106 S.Ct. at 1418. But when parties incorporate the rules of the Association into their contract, they “clearly and unmistakably agree[] that the arbitrator should decide whether the arbitration clause [applies].” Terminix Int’l Co., 432 F.3d at 1332.
Valensa attempts to distinguish our decision in Terminix by arguing that the arbitration clause in that appeal was a broad provision requiring arbitration of all disputes “arising out of or relating to” the contract, id. at 1329 n.l, and here the 2010 arbitration clause contains a carve-out provision for disputes about the breach of the confidentiality provision. Valensa contends that because the arbitration clause in the 2010 contract clearly exempts any claim about breach of confidentiality from arbitration, we would thwart the intent of the parties if we hold that, under Termi-nix, an arbitrator — and not a court — must decide whether such a claim is arbitrable. We disagree.
Terminix is dispositive. When the parties incorporated into the 2007 contract the rules of the Association, they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator. Id. at 1332. And here, it cannot be “said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers” this dispute. AT & T Tech., Inc., 475 U.S. at 650, 106 S.Ct. at 1419 (quoting Warrior & Gulf Nav. Co., 363 U.S. at 582-83, 80 S.Ct. at 1353). That is, Cyanotech presented evidence that the alleged wrongdoing began as early as September 2010, during the term of the 2007 contract and not the 2010 contract, which means that the arbitration clause is “susceptible of an interpretation that covers” the dispute. When the district court announced that Valensa could not rely on anything that occurred during the term of the 2007 contract it recognized that the arbitration clause in the 2007 contract is “susceptible of an interpretation that covers” the dispute. But the district court cannot weigh the evidence to decide which contract governs the dispute or recast the allegations of fact in the complaint to implicate only the 2010 contract.
We need, not address in this appeal whether a carve-out provision in a broad arbitration clause remove's certain claims from an arbitrator’s jurisdiction because Cyanotech did not move to compel arbitration solely under the 2010 contract, which contained the carve-out provision. Cyano-tech raises a factual dispute — which contract governs — and the resolution of that question likely determines whether the allegations of Valensa are arbitrable. So here, we need not decide whether the adoption of the Association rules clearly and unmistakably invites an arbitrator to decide questions of arbitrability when a contract has a carve-out provision.
When we rule on motions to compel arbitration, we look to “the facts alleged in the ... complaint.” Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1208 (11th Cir.2011). But we may ignore the “legal labels” that Valensa assigns to the allegations, Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, *1312 1448 n. 21 (11th Cir.1998), and we are not limited by the way Valensa “couche[s] [its allegations] in various terms and theories of action.” Gregory v. Electro-Mech. Corp., 83 F.3d 382, 384 (11th Cir.1996). We look for the “true thrust” of the complaint even if, “[o]n its facet,] • • • [the complaint] would appear to arise from the [2010] contract.” Ivax Corp. v. B. Braun Am., Inc., 286 F.3d 1309, 1322 (11th Cir. 2002) (first alteration in original) (citation omitted).
Valensa’s complaint alleges causes of action based on the 2010 contract, but its reliance on only the 2010 contract is a legal label. The allegations of fact are the same whether Valensa labels the causes of action as violations of the 2007 contract or the 2010 contract. Although the complaint does not mention the 2007 contract, the facts alleged in the complaint — its “true thrust”—implicate both the 2007 and 2010 contracts. See Ivax Corp., 286 F.3d at 1322. For that reason, the 2007 contract is “susceptible of an interpretation that covers” the dispute. AT & T Tech., Inc., 475 U.S. at 650, 106 S.Ct. at 1419. Both parties agree that, should we conclude Terminix is dispositive of this appeal, we must send their dispute to arbitration in the State of Washington in accordance with the 2010 contract. See Princess Cruise Lines, 657 F.3d at 1208 (relying on the allegations in the complaint to decide whether a district court erred when it denied a motion to compel arbitration). We do not send their dispute to the State of Washington “simply because [the parties] referenced [the rules of the Association] somewhere in the [2010 contract].” See Dissenting Op. at 24. Instead, we send the dispute to the State of Washington because the parties agree that, if we compel arbitration, we should do so as prescribed in the 2010 contract. We remand for the district court to compel arbitration as prescribed in the 2010 contract, and that arbitrator will determine whether the 2007 or 2010 contract governs this dispute.
IV. CONCLUSION
We REVERSE the denial of the motion to compel arbitration and REMAND to the district court to compel arbitration in the State of Washington.