JUSTICE McKINNON,
dissenting.
¶52 In my opinion, this case is controlled by Rent-A-Center, West, Inc., v. Jackson, 561 U.S. 63, 130 S. Ct. 2772 (2010), and the requirement that a delegation provision contained within an arbitration clause must *361 be specifically challenged as unenforceable. I would further conclude that the specific language of the delegation provision and the DDA’s incorporation of the AAA rules provide “clear and unmistakable” evidence that the question of arbitrability was to be decided by an arbitrator. Finally, while non-mutuality is a defense under state law to a contract, not every degree of non-mutuality renders an agreement unconscionable and unenforceable. Under the provisions of this agreement, I would conclude that the non-mutuality of remedies, if any, did not render the arbitration agreement unenforceable.
¶53 Ossello has not made any challenge to the enforceability of the delegation term that is different from her challenge to the arbitration clause in general. Although Ossello acknowledged Global had moved to compel arbitration and that Global requested “the arbitrator (and not this Court) should decide the arbitration clause is enforceable,” she failed to challenge the delegation clause specifically arguing instead that “she cannot be required to arbitrate anything, not even arbitrability, until a court has made a threshold determination that the parties did, in fact, agree to arbitrate.” Ossello fails to recognize that while the threshold question of arbitrability is for the court to decide, the parties, as they did here, may agree to delegate resolution of that controversy to an arbitrator. Accordingly, “unless [Ossello] challenged the delegation provision specifically, [this Court] must treat it as valid under § 2 [of the Federal Arbitration Act], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.”[1],[2],[3] Rent-A-Center, 561 U.S. at 72, 130 S. Ct. *362 at 2779.
¶54 The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. The United States Supreme Court has recognized that “parties can agree to arbitrate ‘gateway[1] questions of‘arbitrability,’ such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.” Rent-A-Center, 561 U.S. at 67, 130 S. Ct. at 2777. The Court explained that because § 2 states that a “written provision” “to settle by arbitration a controversy” is “valid, irrevocable, and enforceable” without mention of the validity of the contract in which it is contained, a party’s challenge to another provision of the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. Rent-A-Center, 561 U.S. at 69, 130 S. Ct. at 2778. Thus, as a matter of “substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.” Buckeye, 546 U.S. at 445, 126 S. Ct. at 1209. If a specific challenge is not made to the delegation clause, then it must be treated as valid under § 2.
¶55 The Court’s severability analysis in Rent-A-Center stems from its earlier decision in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S. Ct. 1801 (1967), in which the Court held that consideration of a contract revocation defense is generally a matter for the arbitrator, unless the defense is specifically directed to the arbitration clause. Prima Paint, 388 U.S. at 404, 87 S. Ct. at 1806. In Prima Paint, the Court addressed “whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators.” Prima Paint, 388 U.S. at 402, 87 S. Ct. at 1805. Guided by § 4 of the FAA, the Court held that “if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the ‘making’ of the agreement to arbitrate — the federal court may proceed to adjudicate it.” Prima Paint, 388 U.S. at 402, 87 S. Ct. at 1806. However, consistent with the principle of the FAA that arbitration is a matter of contract, the parties may agree to have the arbitrator decide arbitrability. Thus, in Rent-A-Center, the Court extended its Prima Paint severability analysis and recognized that a delegation of arbitrability is severable from the contract itself and, as a separate and independent provision of the agreement, must be specifically challenged as unenforceable.
*363 ¶56 The Court has treated the holding in Prima Paint as a rule of severability: when a party challenges a contract, but not specifically the agreement to arbitrate, the agreement to arbitrate is enforceable apart from the contract. Justice Stevens noted in his dissent in Rent-A-Center that “Prima Paint and its progeny allow a court to pluck from a potentially invalid contract a potentially valid arbitration agreement.” Rent-A-Center, 561 U.S. at 85, 130 S. Ct. at 2786 (Stevens, J., dissenting) (emphasis in original). Rent-A-Center thus added a “new layer” of severability: courts must now sever from a potentially invalid agreement an even narrower provision that refers particular arbitrability disputes to an arbitrator. This new layer of severability is consistent with the principle that “[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.” Rent-A-Center, 561 U.S. at 70, 130 S. Ct. at 2777-78. When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract as a whole, the federal courts may not review his claim because it has been committed to the power of the arbitrator. Instead, the plaintiff must “challenge[ ] the delegation provision specifically.” Rent-A-Center, 561 U.S. at 72, 130 S. Ct. at 2779 (emphasis added).[4]
¶57 The challenge Ossello makes is indistinguishable from the challenge made by Jackson and found to be insufficient in Rent-A-Center. Jackson opposed the motion to compel filed by Rent-A-Center on the ground that “the arbitration agreement in question is clearly *364 unenforceable in that it is unconscionable,” Rent-A-Center, 561 U.S. at 66, 130 S. Ct. at 2775; that “the entire arbitration agreement, including the delegation clause, was unconscionable,” Rent-A-Center, 561 U.S. at 73, 130 S. Ct. at 2779 (emphasis added); and that “the arbitration agreement as a whole is substantively unconscionable.” Rent-A-Center, 561 U.S. at 73, 130 S. Ct. at 2779.
¶58 Because Jackson’s opposition only challenged the arbitration agreement as a whole and “none of Jackson’s substantive unconscionability challenges was specific to the delegation provision,” the Court found it unnecessary to consider Jackson’s claim and enforced the agreement as § 2 of the FAA required. Rent-A-Center, 561 U.S. at 73, 130 S. Ct. at 2780. See also Brennan v. Opus Bank, 796 F.3d 1125 (9th Cir. 2015); Parnell v. Cashcall, Inc., 804 F.3d 1142 (11th Cir. 2015).
¶59 Ossello makes the same mistake made by the plaintiff in Buckeye and Rent-A-Center. She argues only that the DDA as a whole is illegal, without any argument specifically that the delegation clause is unenforceable. Jackson made a similar argument which was adopted by the Ninth Circuit Court of Appeals: “a party [who] challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, [leaves] the threshold question of unconscionability... for the court.” Rent-A-Center, 561 U.S. at 67, 130 S. Ct. at 2776.
¶60 However, the Supreme Court considered this argument in Rent-A-Center and specifically rejected it. Accordingly, this Court’s conclusion that Ossello challenged the arbitration clause itself and thus necessarily challenged the delegation provision, Opinion, ¶ 26, is in direct conflict with Rent-A-Center.
¶61 Although I would find that § 2 requires that the delegation clause be enforced because it has not been specifically challenged, I would nonetheless conclude that there is “clear and unmistakable” evidence that the parties agreed to submit the question of arbitrability to an arbitrator. The disputed arbitration clause provides:
In the event of any controversy, claim or dispute between the parties arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the termination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration.
¶62 At Ossello’s urging, the Court has found an ambiguity because “termination” appears out of place. Global argued there was a clerical error and that it should have read “determination.” Regardless of *365 whether the phrase is “termination” or should be “determination,” the language remains clear and unmistakable — the “enforcement,” “interpretation,” “validity,” and “the scope or applicability of [the] Agreement to arbitrate” shall be determined by arbitration. Any conclusion to the contrary is unsupportable and an attempt to manufacture an ambiguity. This is an express delegation clause which constitutes clear and unmistakable evidence that the parties agreed to submit the question of arbitrability to an arbitrator.
¶63 Additionally, the DDA provides that the “parties agree, the arbitration shall be administered by the American Arbitration Association pursuant to its rules and procedures ....” The Commercial Arbitration Rules and Mediation Procedures provide at R-7 that the “arbitrator shall have the power to rule on his or her own jurisdiction, including objections with respect to the existence, scope or validity of the arbitration agreement.”[5] Thus, even in the absence of an express delegation clause, the incorporation of the AAA rules operates as a delegation to an arbitrator of the question of arbitrability. While the Court dismisses Global’s argument that the AAA rules were incorporated into the DDA on the basis that Global did not make them a part of the record, Global has provided the Court with a reference cite to the current AAA Consumer Arbitration Rules and Mediation Procedures and specifically quoted for the Court the relevant portion of R-7 regar ding jurisdiction of the arbitrator.[6] The content of the rules does not appear to be in dispute and may be readily confirmed by visiting the reference cite provided by Global, as many courts have routinely done under similar circumstances. See, e.g., Terminix Int’l Co LP v. Palmer Ranch Ltd P’Ship, 432 F.3d 1327, 1332 (11th Cir. 2005) (citing www.adr.org as the source in identifying and quoting specific AAA rules incorporated into the parties’ arbitration agreement for purposes of ascertaining whether parties had clearly and unmistakably agreed that the arbitrator should decide validity of arbitration clause).
¶64 Where an arbitration agreement incorporates rules conferring authority upon an arbitrator to decide gateway questions, courts have found clear and unmistakable evidence that the parties have contracted around the default rule that the court (rather than an *366 arbitrator) must adjudicate objections to the validity of the arbitration agreement. See U.S. Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014) (“When the parties incorporated into the 2007 contract the rules of the Association, they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator.”). See also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012) (“We agree with most of our sister circuits that the express adoption of [AAA rules into an arbitration agreement] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.”); Terminix Int’l Co LP v. Palmer Ranch LtD P’Ship, 432 F.3d 1327, 1332-33 (11th Cir. 2005) (“By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid. ... In the ordinary case, we would decide these questions only because they go to the validity of the arbitration clause itself, which is by default an issue for the court, not the arbitrator. Here, however, the parties have contracted around that default rule ....”); Southland Health Services, Inc. v. Bank of Vernon, 887 F. Supp. 2d 1158, 1167 (N.D. Ala. 2012) (“The arbitration agreements here clearly demonstrate the parties’ intent to empower the arbitrator with the authority to determine his own jurisdiction. Each agreement states that it is subject to the rules of the AAA. ... Because the agreements empower the arbitrator to determine jurisdiction, this Court is bound by its obligation to rigorously enforce agreements to arbitrate.”) (citation and internal quotation marks omitted); Knowles v. Community Loans of America, Inc., 2012 U.S. Dist. LEXIS 165321, at *5 (S.D. Ala. Nov. 20, 2012) (“One way to show a clear and unmistakable intent to arbitrate arbitrability is by agreeing that the arbitration will be conducted in accordance with formalized arbitration rules, which rules provide for arbitration of arbitrability.”).
¶65 In Oracle America, Inc. v. Myriad Group A. G., 724 F.3d 1069 (9th Cir. 2013), the Ninth Circuit observed, consistent with the above authority, that “[virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.” Oracle, 724 F.3d at 1074. The court found this consensus persuasive in holding that incorporation of the UNCITRAL rules — which contain a jurisdictional provision “almost identical” to the one in the AAA rules — constituted “clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability.” *367 Oracle, 724 F.3d at 1074-75. When the question regarding incorporation of the AAA rules arose again in Brennan v. Opus Bank, 796 F.3d 1125 (9th Cir. 2015), the court clearly and unambiguously stated: “we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.” Brennan, 796 F.3d at 1130.
¶66 Accordingly, the Court cannot reach any of the arguments regarding mutuality or unconscionability if the DDA reflects the parties’ clear and unmistakable intent to have the arbitrator decide threshold disputes concerning such gateway matters as validity and arbitrability. Global has made a compelling showing that the parties clearly and unmistakably intended to arbitrate the question of arbitrability, both through the text of the delegation clause itself and the express incorporation of the AAA rules empowering the arbitrator to rule on his or her own jurisdiction. The relevant authorities (including Brennan, Oracle, Terminix and its progeny) have consistently and rigorously enforced such provisions — which is precisely what this Court should do as well.
¶67 Finally, the Court has chosen an alternative route to find that the arbitration clause is unenforceable, concluding the remedies are non-mutual and “[s]uch one-sided arbitration clauses do not serve the objectives of the FAA.” Opinion, ¶ 41. In electing this alternative route, the Court has avoided the issue primarily raised by the parties — whether Montana’s “reasonable expectations/fundamental rights” rule, first enunciated in Kortum-Managhan v. Herbergers NBGL, 2009 MT 79, 349 Mont. 475, 204 P.3d 693, disproportionally impacts arbitration agreements and is consequently preempted by the FAA under the reasoning of Concepcion. See Mortenson v. Bresnan Commc’ns LLC, 722 F.3d 1151, 1161 (9th Cir. 2013). I would conclude that Montana’s reasonable expectations/fundamental rights rule is contrary to the FAA as interpreted by Concepcion and conclusively answer that question for litigants and the trial courts.
¶68 Regarding the Court’s alternative pursuit of unenforceability, a lack of mutuality of remedies in a contract is a type of “one-sidedness” that is likely peculiar to arbitration agreements. Thus, care must be taken to consider the admonition in Concepcion that, under the doctrine of preemption, state courts cannot adopt “defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.” Concepcion, 563 U.S. at 339, 131 S. Ct. at 1746. Unconscionability frequently includes a one-sided contract. Therefore, a court must consider all of the circumstances of the *368 particular agreement and refrain from adopting an automatic rule that non-mutuality of remedies renders an arbitration agreement unenforceable.
¶69 The Court finds that the remedies are non-mutual because of the following provision contained within the DDA:
Default and Collection of Accounts: If your Account is suspended, cancelled or otherwise terminated for any reason and your Account has a negative balance, you agree to pay the negative balance upon demand, Should you fail to remit the full amount of such negative balance, you shall remain responsible for the deficit and collection actions may be pursued against you. If any such collection action is undertaken, you agree to pay all court costs and collection fees, including reasonable attorney’s fees, to the extent permitted by applicable law.
Contrary to the Court’s reasoning and conclusion, this provision does not give Global the right to bypass arbitration. Arbitration is a matter of contract and when construing a contract we must consider the entirety of the agreement. In addition to the provision relating to default and collection, the DDA provides any “controversy,” “claim,” or “dispute” arising out of the DDA must be submitted to arbitration. These several provisions taken together and construed consistently, in the context of the entire agreement, lead to the conclusion that the default and collection provision concern the execution of the arbitration award following arbitration of any dispute. Furthermore, a review of the DDA demonstrates that the Court’s attempt to “carve out” a non-mutual remedy is misplaced: all disputes are to be submitted to arbitration; arbitration applies equally to Ossello and Global; arbitration is to occur in the county in which Ossello resides; the arbitrator must be neutral and independent; the arbitrator must abide by ethical codes; the arbitration must proceed before a national arbitration forum; both parties give up their right to appeal; and the parties share equally the cost of arbitration, unless Ossello’s costs exceed $2,000 — in which case Global will pay the excess.
¶70 Considering the DDA in its entirety, I cannot agree with the Court that the non-mutual remedies, to the extent they may even exist, renders this arbitration agreement unenforceable. Indeed, the Court’s focus on complete mutuality and one-sidedness will likely disproportionately affect arbitration agreements in violation of Concepcion. Concepcion makes clear that state courts may apply state common law defenses, to the extent they do not disproportionately affect arbitration agreements. Here, I cannot find that mutuality is so lacking that it necessarily indicates substantive unconscionability; nor *369 is the DDA so lacking in fairness, due to blatant one-sidedness, that it cannot escape being unconscionable.
¶71 I would conclude that Ossello has failed to specifically challenge the delegation provision and that § 2 of the FAA requires that an arbitrator decide the question of arbitrability. Nonetheless, the language of the arbitration clause and the incorporation into the DDA of the AAA rules are clear and unmistakable evidence of the parties’ intent to submit the question of arbitrability to an arbitrator. Finally, I do not agree that this arbitration agreement is unenforceable because it is one-sided and lacking in mutuality. No matter what state law infirmity Ossello raises, whether the arbitration agreement fails for lack of mutuality in remedies, lack of consideration, failure of consideration, fraud in the inducement, unconscionability, or being declared fraudulent and void because Global was not a licensed debt settlement provider, the Supreme Court has held — clearly and repeatedly — that such an infirmity is irrelevant to enforceability. Only a discrete challenge directed specifically at the delegation provision itself and a showing that it is invalid under generally applicable state laws — which do not disproportionately affect arbitration agreements — will render the agreement unenforceable.
¶72 I would reverse the District Court’s judgment denying Global’s motion to compel arbitration and allow an arbitrator to decide the question of arbitrability. To the extent we conclude otherwise, I dissent.
JUSTICE RICE joins in the dissenting Opinion of JUSTICE McKinnon.

 9 U.S.C. § 2, the “primary substantive provision of the Act,” Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983), provides:
A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

 Under 9 U.S.C. § 3, a party may apply to a federal court for a stay of the trial of an action upon “any issue referable to arbitration ....”

 Under 9 U.S.C. § 4, a party “aggrieved” by the failure of another party to arbitrate may petition a federal court for an order directing that arbitration proceed. Section 4 reads, in part:
The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. ... If the making of the arbitration *362 agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

 The Court in Rent-A-Center was careful to note that application of the severability rule was required regardless of whether the underlying contract was itself an arbitration agreement. The Court, appearing to respond to the dissent, stated:
To be sure this case differs from Prima Paint, Buckeye, and Preston, in that the arbitration provisions sought to be enforced in those cases were contained in contracts unrelated to arbitration — contracts for consulting services, see Prima Paint, check-cashing services, see Buckeye, and “personal management” or “talent agent” services, see Preston. In this case, the underlying contract is itself an arbitration agreement. But that makes no difference. Application of the severability rule does not depend on the substance of the remainder of the contract. Section 2 operates on the specific “written provision” to “settle by arbitration a controversy that the party seeks to enforce. Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.
Rent-A-Center, 561 U.S. at 71-72, 130 S. Ct. at 2779 (internal citations omitted).

 The rule was amended in October of 2013, without any change in substance, and is now codified as R-14.

 Global’s reference cite to the current AAA Consumer Arbitration rules is at p. 39 of their Opening Brief; Global sets forth R-7 at p. 15 of their Opening Brief.