**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAREY M. BRENNAN,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>OPUS BANK, a California<br>corporation; STEPHEN H. GORDON,<br>*Defendants-Appellees*. | No. 13-35580<br><br>D.C. No.<br>2:13-cv-00094-<br>RSM |

| | |
|---|---|
| CAREY M. BRENNAN,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>OPUS BANK, a California<br>corporation,<br>*Defendant-Appellant*,<br><br>and<br><br>STEPHEN H. GORDON,<br>*Defendant*. | No. 13-35598<br><br>D.C. No.<br>2:13-cv-00094-<br>RSM<br><br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
May 8, 2015—Seattle, Washington

Filed August 11, 2015

Before: J. Clifford Wallace, Andrew J. Kleinfeld,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY[*]

### Arbitration

The panel affirmed the district court's dismissal of plaintiff's diversity action in favor of arbitration; reversed the district court's denial, as moot, of Opus Bank's motion for reconsideration of the district court's implicit denial of its motion to seal plaintiff's complaint; and remanded for the district court to decide Opus Bank's motion to seal the complaint in the first instance.

The plaintiff was the Executive Vice President of Opus Bank when he signed an Employment Agreement that contained an arbitration clause. Plaintiff alleged that Opus Bank breached the Agreement and wrongfully terminated him, and Opus Bank sought to compel arbitration.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that federal law governed the arbitrability question by default because the Agreement was covered by the Federal Arbitration Act, and the parties did not clearly and unmistakenly designate that nonfederal arbitrability law applied.

The panel held that the Agreement's express incorporation of the Rules of the American Arbitration Association (the Delegation Provision), as part of the arbitration provision, constituted clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability. The panel held that *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), applied to this case, and required plaintiff to challenge the specific Delegation Provision inside of the arbitration clause in order for the district court – rather than the arbitrator – to determine the validity of the arbitration clause. The panel concluded that because plaintiff failed to make any arguments specific to the Delegation Provision, and instead argued that the arbitration clause as a whole was unconscionable under state law, the court need not consider that claim because it was for the arbitrator to decide in light of the parties' delegation of that question.

The panel held that the district court's dismissal of plaintiff's claims did not moot Opus Bank's motion to seal the complaint because final judgment and the filing of a notice of appeal did not divest the district court of its jurisdiction over matters ancillary to the appeal, such as protective orders.

## COUNSEL

Michael David Hunsinger (argued), The Hunsinger Law Firm, Seattle, Washington, for Plaintiff-Appellant/Cross-Appellee.

Daniel L. Thieme (argued) and Jennifer S. Pirozzi, Littler Mendelson, P.C., Seattle, Washington, for Defendant-Appellee/Cross-Appellant Opus Bank.

Julian Mack (argued), San Francisco, California; Patrick M. Madden and Mark. S. Filipini, K&L Gates LLP, Seattle, Washington, for Defendant-Appellee Stephen Gordon.

## OPINION

WALLACE, Senior Circuit Judge:

Brennan appeals from the district court's order dismissing his action in favor of arbitration. Opus Bank cross appeals from the district court's implicit denial of its motion to seal Brennan's complaint, and the district court's denial of its motion for reconsideration as moot. We have jurisdiction of both appeals pursuant to 28 U.S.C. § 1291. We affirm the district court's dismissal in favor of arbitration, but we reverse the district court's denial of Opus Bank's motion for reconsideration as moot. Because the district court has inherent supervisory authority over its own records even after final judgment and the filing of a notice of appeal, we remand for the district court to decide Opus Bank's motion to seal in the first instance.

## I.

Brennan became the Executive Vice President and Director for Strategy and Corporate Development for Opus Bank in December 2010, when he signed an Employment Agreement with Opus Bank. The Employment Agreement described Brennan's duties in section 2 as those "customary, appropriate and reasonable executive duties . . . normally assigned to a person with such position at other similarly situated banks, including such duties as are delegated to him from time to time by the Chief Executive Officer," Stephen Gordon, to whom he was to report directly.

For the first several months of his employment, Brennan performed executive-level duties that he considered consistent with his position as Executive Vice President. But by late 2011, Brennan said that he was beginning to be excluded from many of the activities he had been hired to perform, and that his involvement in important business transactions had "steadily diminished." Brennan also alleged that although it was his responsibility to formulate Opus Bank's long-range strategic and financial objectives, Gordon "began dismissing or rejecting Brennan's . . . analyses of the Bank's . . . financial condition," and "frequently relegate[d] mundane tasks to Brennan that were not customary, appropriate, and reasonable executive duties . . . normally assigned to a person with such position at other similarly situated banks."

The Employment Agreement contained a provision granting Brennan the right to terminate his employment for "Good Reason," whereupon he would be entitled to a generous severance payment. "Good Reason" was defined in the Employment Agreement to include a "material change in

[Brennan's] function, duties, or responsibilities with the Bank," that "would cause [Brennan's] position to become one of substantially lesser responsibility or scope from the position and attributes described in [s]ection 2 above, unless consented to by [Brennan]." Believing that such a "material change" had occurred with respect to his work responsibilities, Brennan sent Opus Bank a Notice of Termination with Good Reason on March 19, 2012.

Opus Bank subsequently placed Brennan on "administrative investigatory suspension" while it retained an independent attorney to investigate whether Brennan's termination was in fact for "Good Reason," and whether, based upon Brennan's failure to attend certain mandatory meetings, Opus Bank could terminate Brennan for "Cause," as defined in the Employment Agreement. After receiving the attorney's report, Opus Bank wrote a letter to Brennan on April 18, 2012, notifying him that it was adopting the attorney's conclusions that Brennan did not have "Good Reason" to terminate his employment, but that Opus Bank also lacked "Cause" to terminate Brennan. Nonetheless, Opus Bank told Brennan it was construing his March 19 Notice of Termination as a voluntary resignation, and that Brennan therefore was not entitled to a severance payment or other termination benefits.

In January of the following year, Brennan sued Opus Bank in federal district court under diversity jurisdiction. *See* 28 U.S.C. § 1332. Brennan's complaint alleged that Opus Bank breached the Employment Agreement and wrongfully terminated him in violation of both California and Washington state law. It also alleged that Opus Bank and Gordon unlawfully withheld wages in violation of Washington state law.

Brennan's complaint acknowledged that section 16 of the Employment Agreement (the Arbitration Clause), entitled "Dispute Resolution Procedures," was a mandatory arbitration provision which provided in relevant part: "Except with respect to any claim for equitable relief . . . any controversy or claim arising out of this [Employment] Agreement or [Brennan's] employment with the Bank or the termination thereof . . . shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association." Nevertheless, Brennan argued that his "causes of action should be resolved by litigation, rather than arbitration," because the Arbitration Clause was both procedurally and substantively unconscionable, and therefore unenforceable.

Opus Bank responded to Brennan's complaint with a motion to seal and to strike Brennan's complaint, as well as a motion to compel arbitration under the Arbitration Clause and the Federal Arbitration Act (FAA). In its motion to compel arbitration, Opus Bank argued that both the employment dispute *and* the question whether the Arbitration Clause was unconscionable had to be decided by the arbitrator instead of the court. Opus Bank argued that the unconscionability of the Arbitration Clause also had to be decided by the arbitrator because the Employment Agreement expressly incorporated the Rules of the American Arbitration Association (AAA), one of which states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." Incorporation of the AAA rules, Opus Bank contended, constituted clear and unmistakable evidence that the parties intended to have this unconscionability question decided by an arbitrator. The district court agreed

with Opus Bank, and, applying federal arbitrability law, dismissed the action in favor of arbitration.

The district court's dismissal order, however, did not address Opus Bank's motion to seal Brennan's complaint. Consequently, Opus Bank filed a motion for reconsideration of that issue, but the district court denied the motion as "moot[]," given the district court's earlier dismissal of the underlying action.

Brennan timely appealed from the district court's dismissal in favor of arbitration, and Opus Bank timely cross-appealed from the district court's denial of Opus Bank's motion for reconsideration regarding the request to seal Brennan's complaint.

"We review de novo the district court's decisions about the arbitrability of claims." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). Moreover, although we typically "review for abuse of discretion the district court's decision not to seal the judicial record," *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014), here we review de novo because "the district court failed to exercise its discretion" by "denying as moot the bulk of [Opus Bank's] motion without considering its merits." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006).

II.

Brennan's opening brief narrows his appeal to a single issue: "[t]he only issue before this Court is who—an arbitrator or a judge—should decide" whether the Arbitration Clause is unconscionable. The thrust of Brennan's appeal is that California law should apply, and that under California

law the district court erred in concluding that the specific provision of the Arbitration Clause incorporating the AAA rules of arbitration (Delegation Provision) "clearly and unmistakably" delegated to an arbitrator the question whether the Arbitration Clause was unconscionable and therefore unenforceable.

A.

We begin by addressing the applicable law. Brennan argues that the district court erred in applying federal law—rather than California law—to decide this question. However, federal law governs the arbitrability question by default because the Agreement is covered by the FAA, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), and the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies, *see Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011).

Brennan concedes, as he must, that the FAA governs the Employment Agreement because the FAA applies to any contract, like the present one, "evidencing a transaction involving commerce." 9 U.S.C. § 2. For "any arbitration agreement within the coverage of the [FAA]," "[t]he court is to make th[e] [arbitrability] determination by applying the federal substantive law of arbitrability," *Mitsubishi Motors*, 473 U.S. at 626, "absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." *Cape Flattery*, 647 F.3d at 921 (internal quotation marks omitted).

The Employment Agreement does not clearly and unmistakably indicate that California's law of arbitrability

should apply because it states only that "any controversy of claim . . . shall be settled by binding arbitration"; that—in the event of arbitration—"the parties shall retain the rights of all discovery provided pursuant to the California Code of Civil Procedure"; and that "[a]ll rights, causes of action, remedies and defenses available under California law and equity . . . as though in a court of law." While the Employment Agreement is clear that California's procedural rules, rights, and remedies apply *during* arbitration, it says nothing about whether California's law governs the question whether certain disputes are to be submitted to arbitration in the first place.

In *Cape Flattery*, we concluded that a similar arbitration provision—which said "[a]ny dispute arising under this Agreement shall be settled by arbitration . . . in accordance with the English Arbitration Act 1996,"—was "ambiguous concerning whether English law also applies to determine whether a given dispute is arbitrable in the first place." 647 F.3d at 921. The Employment Agreement at issue here is similarly "ambiguous" because it does not expressly state that California law governs the question of *arbitrability*. We therefore hold that federal arbitrability law applies in the present case.

Brennan's argument is not assisted by *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475–76 (1989). *Volt* dealt with a dispute about whether the parties' agreement to conduct arbitration in accordance with the *procedural* rules of the California Arbitration Act was enforceable even though the agreement fell within the scope of the FAA. Although the FAA preempts "state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed

to resolve by arbitration,'" *id.* at 478, quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984), the Court held that the FAA does not "prevent[] the enforcement of agreements to arbitrate *under different rules* than those set forth in the [FAA] itself," *id.* at 479 (emphasis added), because "[t]here is no federal policy favoring arbitration under a certain set of procedural rules," *id.* at 476. However, the parties here do not dispute which procedural rules are applicable during arbitration. Rather, they dispute which substantive law governs the arbitrability question. *Volt*'s holding does not address this question and does not alter our conclusion that federal law of arbitrability applies.

## B.

Brennan next contends that even if federal arbitrability law applies, the district court erred by concluding that incorporation of the AAA rules constitutes "clear and unmistakable" evidence that the parties intended to delegate the arbitrability question to an arbitrator. We disagree.

Generally, in deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, these gateway issues can be expressly delegated to the arbitrator where "the parties *clearly and unmistakably* provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (emphasis added); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so").

The district court agreed with Opus Bank that under federal arbitrability law, the Delegation Provision "clearly and unmistakably" delegated to an arbitrator the question whether the Arbitration Clause was enforceable by expressly incorporating the AAA arbitration rules, one of which provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement."

In *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) we observed that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1074. We found this consensus persuasive in holding that incorporation of the UNCITRAL rules—which contain a jurisdictional provision "almost identical" to the one in the AAA rules—constituted "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Id.* at 1074–75. Now that the question regarding incorporation of the AAA rules is squarely before us, we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.

The issue of the sophistication of the parties was raised at oral argument. Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that

incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Republic of Arg. v. BG Grp. PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–12 (1st Cir. 2009).

Nevertheless, as in *Oracle America*, we limit our holding to the facts of the present case, which do involve an arbitration agreement "between sophisticated parties." *Oracle America*, 724 F.3d at 1075 & n.2. Indeed, it is undisputed that Brennan was a sophisticated party, an experienced attorney and businessman (a partner at Jones Day from 1984 to 2001, and Senior Vice President, General Counsel, and Deputy Chief Legal Officer of Washington Mutual from 2001 to 2008), who executed an executive-level employment contract with Opus Bank, a sophisticated, regional financial institution.

Of course, the contract at issue here is an at-will employment contract, not a commercial contract like the one at issue in *Oracle America*. *Cf. Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001) (holding that the FAA covers not only commercial contracts but also employment contracts, implying that there is a difference between the two); *see also O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1202 (10th Cir. 2004) (stating that "[i]t is beyond

dispute that at-will employment contracts . . . differ significantly from commercial contracts," and that the differences between the two militate against implying a covenant of good faith and fair dealing to at-will employment contracts). However, we conclude that the differences between the Employment Agreement at issue here and the commercial contract at issue in *Oracle America* are irrelevant to our determination whether these parties' incorporation of the AAA rules shows a clear and unmistakable intent to delegate arbitrability to an arbitrator. We therefore hold that the district court did not err in concluding that these parties' incorporation of the AAA rules constituted "clear and unmistakable" evidence of their intent to submit the arbitrability dispute to arbitration. But we need not decide nor do we decide here "the effect [if any] of incorporating [AAA] arbitration rules into consumer contracts" or into contracts of any nature between "unsophisticated" parties. *Oracle America*, 724 F.3d at 1075 & n.2.

Brennan contends that despite the Delegation Provision, the Arbitration Clause itself removes the unconscionability question from its scope because it carves out "any claim for equitable relief"and "unconscionability is an equitable matter under California law." We disagree for two reasons. First, although courts have held that a defendant's reliance on an arbitration clause to avoid litigation is an equitable *defense*, *see, e.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1462 (9th Cir. 1983), it is not a *claim* for equitable relief. Second, accepting Brennan's argument would directly contradict the fact that Brennan and Opus Bank "clearly and unmistakably" delegated the unconscionability determination to the arbitrator in the Delegation Provision located in that very same Arbitration Clause.

C.

Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). Brennan argues that the district court erred in holding that *Rent-A-Center* required him to challenge the *specific* Delegation Provision inside of the Arbitration Clause in order for the court—rather than the arbitrator—to determine the validity of the Arbitration Clause. According to Brennan, *Rent-A-Center* did not alter the general rule that as long as a party challenges the enforceability of an arbitration clause specifically—rather than the entire contract generally—the enforceability of the arbitration clause is for the court, not the arbitrator, to decide.

But the facts in *Rent-A-Center* required the Supreme Court to take this principle a step further. Until *Rent-A-Center*, the cases following this "specific challenge" principle dealt primarily with contracts of a general subject matter (like employment), which contained a single arbitration clause. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). *Rent-A-Center*, however, involved a contract whose exclusive subject matter was arbitration, and embedded within *that* contract were "multiple written provision[s] to settle by arbitration a controversy." 561 U.S. at 68 (internal quotation marks omitted). Two provisions were relevant to the Court's analysis. The first was an agreement to arbitrate all disputes "arising out of Jackson's employment with Rent-A-Center." *Id.* The second was an agreement to delegate to an arbitrator resolution of "any dispute relating to the . . . enforceability . . . of the

[Arbitration] Agreement." *Id.* Jackson, an employee of Rent-A-Center, challenged the entire Arbitration Agreement as unconscionable. *Id.* In turn, Rent-A-Center sought to enforce the specific delegation provision inside that contract to send the question to an arbitrator. *Id*.

The Supreme Court concluded that this delegation provision was "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* The Court then clarified the general rule requiring specificity in the plaintiff's challenge, and held that when considering a challenge to the validity of one of multiple, severable arbitration provisions, the Court would always "require the basis of the challenge to be directed *specifically* to the agreement to arbitrate [at issue] before the court will intervene." *Id.* (emphasis added); *see also id.* ("*If* a party challenges the validity . . . of the *precise* agreement to arbitrate *at issue*, the federal court must consider the challenge before ordering compliance with that agreement." (emphasis added)).

The Court concluded that the arbitration agreement "at issue" in *Rent-A-Center* was the delegation provision, because *that* was the provision "that Rent-A-Center asks us to enforce." *Id.* at 71. The "remainder of the contract," held the Court, "is the rest of the agreement to arbitrate claims arising out of Jackson's employment with Rent-A-Center." *Id.* The court held that it made "no difference" that "the underlying contract is itself an arbitration agreement" rather than a contract unrelated to arbitration. *Id.* at 72. A federal court's duty to enforce an arbitration provision, held the Court, "operates on the specific 'written provision' . . . that the party seeks to enforce," so "unless Jackson challenged the

delegation provision specifically, [the Court] must treat it as valid . . . and must enforce it . . . leaving any challenge to the validity of the [arbitration] Agreement as a whole for the arbitrator." *Id.* The court held that although Jackson had challenged the "entire arbitration agreement" as unconscionable, he "did not make any arguments specific to the delegation provision." *Id.* at 74. Consequently, the Court said it "need not consider [his unconscionability claim] because none of Jackson's substantive unconscionability challenges was specific to the delegation provision." *Id.* at 73. In order to have the federal court address his unconscionability challenge, Jackson would have had to argue that the agreement to delegate to an arbitrator his unconscionability claim was *itself* unconscionable. *Id.* at 74.

We conclude that *Rent-A-Center* controls the present case. Here, three agreements—each nested inside the other—are relevant to our analysis: (1) Brennan's Employment Agreement, (2) the Arbitration Clause (section 16), and (3) the Delegation Provision (i.e., incorporation of the AAA rules which delegates enforceability questions to the arbitrator). The last two are separate agreements to arbitrate different issues. Thus, just like in *Rent-A-Center*, multiple severable arbitration agreements exist. The arbitration clause at issue, as in *Rent-A-Center*, is the Delegation Provision because that is the arbitration agreement Opus Bank seeks to enforce. By Brennan's own admission, the delegation provision is the "specific 'written provision'" *at issue*. *Id.* at 72. He states the "only issue before this Court is *who*—an arbitrator or a judge—should decide the forum" for resolving the validity of the Arbitration Clause as a whole, and that question is resolved by determining the validity of the Delegation Provision alone. But since Brennan failed to "make any arguments specific to the delegation provision,"

*id.* at 74, and instead argued "that the [Arbitration Clause] *as a whole* is unconscionable under state law," *id.* at 75, "we need not consider that claim," *id.* at 73, because it is for the arbitrator to decide in light of the parties' "clear and unmistakable" delegation of that question, as we held above. Accordingly, the district court did not err in dismissing Brennan's claims in favor of arbitration.

Brennan's reliance on *Quilloin v. Tenet Health Sys. Phila., Inc.*, 673 F.3d 221 (3d Cir. 2012) does not help him. Brennan reads *Quilloin* to foreclose the requirement that a party must specifically challenge the delegation provision if the contract "contain[s] only one agreement to arbitrate" because in such cases "[t]here [is] no need to distinguish between multiple agreements to arbitrate." However, the critical difference between this case and *Quilloin* is that the agreement in *Quilloin* "d[id] not purport to contain a[] [severable] agreement to arbitrate arbitrability," so *Rent-A-Center*, which dealt with *multiple* severable agreements to arbitrate (including one to arbitrate arbitrability), did not apply and "the question of arbitrability [was] one for the court." *Id.* at 229. Here, in contrast, like in *Rent-A-Center*, there are multiple severable agreements to arbitrate, and Brennan failed to challenge the specific one at issue—the agreement to arbitrate arbitrability—as *Rent-A-Center* requires. *Quilloin* is therefore distinguishable, and *Rent-A-Center* controls.

Brennan also misinterprets our holding in *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010), which came after *Rent-A-Center*, as implying that *Rent-A-Center* controls only in cases where the entire contract deals exclusively with arbitration. We held in *Bridge Fund Capital* that "as long as the plaintiff's challenge to the

validity of an arbitration clause is a distinct question from the validity of the contract as a whole, the question of arbitrability is for the court to decide." *Id.* at 998. Brennan contends that *Bridge Fund Capital* stands for the proposition that the plaintiff need not drill down into the global arbitration provision—as required in *Rent-A-Center*—unless the contract itself is one dealing exclusively with arbitration. However, *Bridge Fund Capital* is distinguishable in the same way *Quilloin* is distinguishable: it addressed a situation involving a contract that was not exclusively about arbitration (franchising), but that contained only one arbitration provision. It did not address the situation here, which involves a contract not exclusively about arbitration (employment) but—critically—involves *multiple* severable arbitration agreements. *Rent-A-Center* controls in cases like the present one, where there are multiple severable arbitration agreements, only one of which is "at issue."

We therefore affirm the district court's order dismissing this action in favor of arbitration.

III.

On cross appeal, Opus Bank argues that the district court erred in denying as moot its motion for reconsideration to seal Brennan's complaint. We agree.

A district court may seal its records pursuant to its inherent supervisory power over such documents. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files"). Final judgment and even the filing of a notice of appeal does not divest a district court of its jurisdiction over matters

ancillary to the appeal, such as protective orders. *Cf. Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the *appeal*." (emphasis added)). Therefore, the district court's dismissal of Brennan's claims did not moot Opus Bank's motion to seal Brennan's complaint. We vacate and remand for the district court to rule on Opus Bank's motion to seal, pursuant to its inherent supervisory power over its own records.

Our order sealing certain of our records on appeal, which we did only to maintain the status quo, should have no bearing on the district court's independent decision on remand whether to seal its own records. The district court is to examine the issue without reference to our sealing decision and make its own decision.

**AFFIRMED** in part, and **VACATED** and **REMANDED** in part.