**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHRISTOPHER M. LAVER, on behalf of himself and others similarly situated,

*Plaintiff-Appellant*,

v.

CREDIT SUISSE SECURITIES (USA), LLC,

*Defendant-Appellee.*

No. 18-16328

D.C. No. 3:18-cv-00828-WHO

OPINION

Appeal from the United States District Court for the Northern District of California William Horsley Orrick, District Judge, Presiding

Argued and Submitted February 13, 2020 San Francisco, California

Filed September 18, 2020

Before: Ronald M. Gould and Mary H. Murguia, Circuit Judges, and Gary Feinerman,[*] District Judge.

Opinion by Judge Feinerman

---

   [*] The Honorable Gary Feinerman, United States District Judge for the Northern District of Illinois, sitting by designation.

**SUMMARY**[**]

**Arbitration**

The panel affirmed the district court's dismissal of a putative class action suit against Credit Suisse Securities, USA in favor of arbitration.

Plaintiff worked as a financial advisor at Credit Suisse Securities, USA ("CSSU"), and brought this putative class action alleging he was owed deferred compensation. CSSU moved to dismiss based on an arbitration clause and general class waiver set forth in an Employee Dispute Resolution Program. The Financial Industry Regulatory Authority ("FINRA") is a securities industry self-regulatory organization that imposes rules regulating the conduct of its broker-dealer members. CSSU is a FINRA member. Plaintiff argued that FINRA Rule 13204(a)(4) barred CSSU from compelling arbitration of his claims.

The panel rejected plaintiff's contention that Rule 13204 invalidated the Employee Dispute Resolution Program's class waiver. Because the class waiver survived, the panel held that plaintiff relinquished his right to bring class claims in any forum. Because plaintiff was left with only individual claims, Rule 13204(a)(4)'s prohibition on enforcing arbitration agreements directed at putative or certified claims had no application here. In accord with the Second Circuit's decision in *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174 (2d Cir. 2015), the panel held that the district court correctly

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ordered the parties to arbitrate plaintiff's remaining individual claims.

## COUNSEL

Roger N. Heller (argued) and Robert J. Nelson, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, California; Taras Kick, The Kick Law Firm APC, Los Angeles, California; Jeffrey K. Riffer and Julie Z. Kimball, Elkins Walt Weintraub Reuben Gartside LLP, Los Angeles, California; for Plaintiff-Appellant.

David Jacobs (argued), Edward J. Loya Jr., Deanna L. Ballesteros, and David M. Prager, Epstein Becker & Green, Los Angeles, California, for Defendant-Appellee.

## OPINION

FEINERMAN, District Judge:

The district court dismissed Christopher Laver's putative class action suit against Credit Suisse Securities, USA ("CSSU") in favor of arbitration. 2018 WL 3068109 (N.D. Cal. June 21, 2018). Laver appeals, arguing that Financial Industry Regulatory Authority ("FINRA") Rule 13204(a)(4) bars CSSU from compelling arbitration of his claims. We affirm.

## I

Laver worked as a financial adviser in CSSU's "Private Banking Division." Form contracts governing the employment of CSSU financial advisers entitled them to

"deferred compensation" unless they resigned or were terminated for cause. A "Change in Control" provision in the contracts provided that certain corporate acquisitions would allow the advisers to retain their entitlement to certain unvested deferred compensation.

In October 2015, CSSU announced that it had entered into a "recruiting agreement" with Wells Fargo and would shut down its financial advisory operations. The agreement stated that Wells Fargo would recruit former CSSU financial advisers but would not be required to offer them employment. Laver alleges that CSSU entered into the agreement to circumvent the "Change in Control" provision and avoid paying its financial advisers millions of dollars in deferred compensation. CSSU ultimately paid deferred compensation only to those advisers hired by Wells Fargo, and not to advisers—including Laver—whom Wells Fargo did not hire.

Alleging that he is owed deferred compensation, Laver filed this putative class action suit, which alleges breach of contract and other state law claims. CSSU moved to dismiss the suit in favor of arbitration. CSSU premised its motion on an arbitration clause and a general class waiver set forth in an Employee Dispute Resolution Program ("EDRP") agreed to by Laver and the other financial advisers. The arbitration clause states: "The three steps of the [EDRP] are . . . the only means by which [CSSU] employees located in the United States are able to seek resolution of employment-related claims of the type covered by the [EDRP]. They may not sue in court as to these claims." The class waiver states: "An employee's agreement to abide by the terms of the [EDRP] includes an agreement not to serve as a class representative or class member or act as a private attorney general in any dispute with [CSSU]." (Laver contends that

the 2015 version of the EDRP governs, and we assume without deciding that he is correct.)

Laver argued to the district court that FINRA Rule 13204(a)(4) bars CSSU, a FINRA member, from compelling arbitration of his claims. The district court disagreed, reasoning that Rule 13204 does not bar CSSU from enforcing the EDRP's class waiver and that, because the waiver renders Laver unable to pursue a class action in any forum—including arbitration—the Rule's prohibition against the compelled arbitration of putative class actions does not apply to his claims. 2018 WL 3068109, at *7–10.

## II

"We review de novo the district court's decisions about the arbitrability of claims." *Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015) (internal quotation marks omitted).

## A

FINRA is a securities industry self-regulatory organization registered with the Securities and Exchange Commission under Section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 78o-3. As a condition of its registration, FINRA must impose rules regulating the conduct of its broker-dealer members and other participants. *Id.* § 78o-3(b)(6)–(8). "Upon joining FINRA, a member organization agrees to comply with FINRA's rules." *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011). A "FINRA member, therefore, . . . is bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein." *Id.* at 649; *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 737 (9th Cir. 2014) (Battaglia, J.,

concurring) ("To exercise [its] oversight, FINRA has instituted rules with which its members … agree to comply.").  CSSU is a FINRA member.

FINRA Rule 13204(a) provides in relevant part:

(a) Class Actions

(1) Class action claims may not be arbitrated under the [FINRA] Code [of Arbitration Procedure for Industry Disputes].

(2) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(A) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(B) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(3) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(4) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

- The class certification is denied;

- The class is decertified;

- The member of the certified or putative class is excluded from the class by the court; or

- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

\*\*\*

These subparagraphs do not otherwise affect the enforceability of any rights under the Code or any other agreement.

FINRA, Rule 13204 (2012).

Section 2 of the Federal Arbitration Act ("FAA") provides in relevant part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. A court may compel arbitration of "only those disputes . . . that the parties have agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 302 (2010) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "As with any other contract, the parties' 'intentions control.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Although the FAA imposes "a liberal federal policy favoring arbitration agreements" that "requires courts to enforce agreements to arbitrate according to their terms," its mandate can be "overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). To defeat arbitration, Laver must therefore establish that Rule 13204(a)(4) is "contrary" to the EDRP's arbitration agreement, such that it bars CSSU from enforcing it against him, and that the Rule is a "congressional command" that overrides the FAA. *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 176 (2d Cir. 2015). "We need not consider whether Rule 13204 is a

'congressional' command because we conclude that it is not 'contrary'" to the EDRP's arbitration agreement. *Id.*

## B

At the outset it is important to understand that "[a]lthough [class action] waivers are often found in arbitration agreements (and are so incorporated in this case), the two contract terms are *conceptually distinct*." *Id.* (emphasis added); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." (quoting *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 445 (2006))). A class action waiver is a promise to forgo a procedural right to pursue class claims. *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234 (2013). By contrast, an agreement to arbitrate "is a promise to have a dispute heard in some forum *other than a court*." *Cohen*, 799 F.3d at 179. Rule 13204 restricts the latter, but not the former. *Id.*

CCSU is not seeking to arbitrate Laver's class action claims. Rather, it seeks to dismiss Laver's class action claims under the EDRP's class action waiver and then to compel arbitration of his individual claims under the EDRP's arbitration agreement. Laver does not dispute that *if* CSSU may enforce the EDRP's class waiver, then he may pursue only individual claims. In that case, Rule 13204(a)(4), which prohibits the compelled arbitration only of claims that are the subject of a certified or putative class action, would not preclude CSSU from enforcing the EDRP's arbitration agreement against his remaining individual claims. Laver contends, however, that Rule 13204(a)(4) bars CSSU from enforcing the EDRP's class waiver in any forum. If Laver is right, he can pursue class

claims against CSSU in any forum, which means that Rule 13204(a)(4) could bar CSSU from enforcing the EDRP's arbitration agreement against him altogether.

Laver's contention fails to persuade. If Rule 13204 were read to bar class waivers, it would, when enforced along with the Rule's prohibition against the compelled arbitration of class claims, entirely bar the enforcement of agreements to arbitrate claims that could be maintained as part of a putative or certified class action. Although reading Rule 13204 to bar class action waivers might not, on its face, expressly interfere with arbitration, the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), makes clear that a rule not expressly targeting arbitration— like a rule restricting the availability of class waivers—can interfere with arbitration in a manner that impermissibly conflicts with the FAA. Specifically, *AT&T Mobility* held that California's judge-created *Discover Bank* rule barring class action waivers "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA" by "[r]equiring the availability of classwide arbitration." *Id.* at 344.

Laver's reading of Rule 13204 to bar class waivers would interfere with arbitration to an even *greater* extent by moving the resolution of class claims out of arbitration entirely. Accordingly, Rule 13204 can bar class waivers in arbitration only if that bar is a "contrary congressional command" that "override[s]" the FAA's "require[ment] [that] courts … enforce agreements to arbitrate according to their terms." *CompuCredit*, 565 U.S. at 98; *see Cohen*, 799 F.3d at 176, 178 (explaining that the plaintiff would have to establish that Rule 13204 "qualifies as a congressional' command," but declining to decide the issue "because [the Rule] is not 'contrary'" to a materially

identical class waiver)).  For the following reasons, even assuming Rule 13204 qualifies as a "congressional command," the Rule does not bar class waivers with the clarity necessary to displace the FAA's instruction that courts enforce arbitration agreements according to their terms.  The Rule therefore does not bar CSSU from enforcing the EDRP's class waiver—and then the EDRP's arbitration agreement—against Laver.

**1**

Laver's first argument—that where, as here, a class waiver is included in an arbitration agreement, Rule 13204(a)(4)'s prohibition on enforcing the arbitration agreement also bars enforcement of the class waiver—requires little discussion.  As is clear from its text, the Rule does not bar enforcement of all contracts containing an arbitration agreement, or even of all contracts styled as arbitration agreements.  Rather, the Rule bars enforcement only of an "agreement to arbitrate."  Laver's agreement not to pursue class litigation in any forum, including arbitration, is not an "agreement to arbitrate."  *See Cohen*, 799 F.3d at 179 ("Although [class] waivers are often found in arbitration agreements (and are so incorporated in this case), the two contract terms are conceptually distinct."); *cf. Rent-A-Center*, 561 U.S. at 71 (holding that "an arbitration provision is severable from the remainder of the contract," even where the contract containing the arbitration provision is itself an arbitration agreement (quoting *Buckeye*, 546 U.S. at 445)).  It follows that Rule 13204 does not bar CSSU's enforcement of the EDRP's class waiver simply because it is included in a document that also contains an agreement to arbitrate. *See Cohen*, 799 F.3d at 178 ("Rule [13204] bars arbitration of a claim so long as [the claim] is embedded in a class action or collective action[.] . . . [The Rule] does not

preserve the right to assert a claim in class or collective form notwithstanding a contractual waiver.").

**2**

Laver's second argument—that Rule 13204 bars class waivers regardless of whether they appear in an arbitration agreement—also fails to persuade. The standard for determining whether Rule 13204 is "contrary" to the EDRP, and thereby overrides the FAA, is difficult to meet. In *Epic Systems v. Lewis*, the Supreme Court considered whether Section 7 of the National Labor Relations Act ("NLRA")— which guarantees the right of employees to "engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection"—protected the right of employees to pursue a class action in court despite an otherwise applicable arbitration agreement, thereby displacing the FAA. 138 S. Ct. 1612, 1624–26 (2018). The Court observed that a "party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a *clearly expressed* congressional intention that such a result should follow.'" *Id.* at 1624 (emphasis added) (quoting *Vinmar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995)). The Court added that such an "intention must be 'clear and manifest,'" *id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)), and that "in approaching a claimed conflict, we come armed with the 'stron[g] presum[ption]' that repeals by implication are 'disfavored'[.]" *Id.* (alterations in original) (quoting *United States v. Fausto*, 484 U.S. 439, 452 (1988)). The Court concluded that Section 7 was not contrary to the arbitration agreement in that case—and therefore did not displace the FAA—because it "does not express approval or disapproval

of arbitration" or "mention class or collective action procedures." *Id.*

Unlike Section 7 of the NLRA, Rule 13204 imposes explicit limits on arbitration—specifically, a FINRA member's ability to enforce an arbitration agreement directed at claims that are part of a certified or putative class action. But the Rule does not expressly prohibit, and in fact does not even mention, class waivers. Under the standard articulated in *Epic Systems*, it necessarily follows that the Rule does not present a sufficiently clear prohibition on class waivers to be "contrary" to the EDRP, such that it would displace the FAA's instruction to enforce arbitration agreements according to their terms. Therefore, the Rule does not prohibit CSSU from enforcing the EDRP's class action waiver—and, consequently, its arbitration agreement. *See id.* at 1632 (holding that where a court can "easily read" an enactment "to work in harmony" with the FAA, "that is where [the court's] duty lies").

This conclusion is fortified by the final sentence of Rule 13204, which reads: "These subparagraphs do not otherwise affect the enforceability of any rights under the [FINRA] Code [of Arbitration Procedure for Industry Disputes] or any other agreement." FINRA Rule 13204. Because Rule 13204 specifically bars enforcement of certain arbitration agreements but does not mention class waivers, that sentence confirms that the Rule should not be read to prohibit a FINRA member from enforcing a class waiver—which, as noted, is an agreement separate from an arbitration agreement and thereby qualifies as an "other agreement." *See Cohen*, 799 F.3d at 179 ("Although [class] waivers are often found in arbitration agreements (and are so incorporated in this case), the two contract terms are conceptually distinct."); *but cf. Dep't of Enf't v. Charles*

*Schwab & Co.*, 2014 WL 1665738, at \*7 n.11 (FINRA Bd. of Govs. Apr. 24, 2014) (taking the contrary view of the phrase "any other agreement" in a materially identical sentence of another FINRA Rule, but erroneously assuming that a class waiver appearing in the same instrument as an arbitration agreement is part of, rather than severable from, the agreement to arbitrate).

Laver offers several other grounds—resting variously on the Rule's regulatory history, an SEC order concerning a predecessor rule, a FINRA letter, a FINRA notice, and a FINRA Board of Governors decision—to divine a prohibition on class waivers in Rule 13204. There is no need to delve into those materials, for the SEC's or FINRA's understanding of a FINRA rule or the rule's relationship to the FAA cannot overcome the absence of a "clear and manifest" prohibition against class waivers in Rule 13204. *Epic Sys.*, 138 S. Ct. at 1624; *see also id.* at 1629 (holding that an agency is owed no deference when it interprets rules not "in isolation," but instead "in a way that limits the work of a second statute, the Arbitration Act," reasoning that "the reconciliation of distinct statutory regimes is a matter for the courts" (quoting *Gordon v. N.Y. Stock Exch., Inc.*, 422 U.S. 659, 685–86 (1975)).

In sum, Laver is wrong to contend that Rule 13204 invalidates the EDRP's class waiver. Because the class waiver survives, Laver relinquished his right to bring class claims in any forum, and because he is left with only individual claims, Rule 13204(a)(4)'s prohibition on enforcing arbitration agreements directed at putative or certified class claims has no application here. It follows that the district court correctly ordered the parties to arbitrate Laver's remaining individual claims. In so holding, we align ourselves with the Second Circuit's decision in *Cohen v.*

*UBS Financial Services, Inc.*, *supra*, the only appeals court decision to have addressed a materially identical dispute.

**AFFIRMED.**