NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 8 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RAUL RUIZ, Representative,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>KELLY SERVICES GLOBAL, LLC,<br><br>Defendant - Appellant. | No. 24-6529<br><br>D.C. No.<br>2:23-cv-02682-DAD-JDP<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted December 9, 2025
San Francisco, California

Before: BUMATAY, JOHNSTONE, and DE ALBA, Circuit Judges.
Dissent by Judge BUMATAY.

Kelly Services Global, LLC appeals the district court's partial denial of its

motion to compel arbitration of Raul Ruiz's claims under California's Unfair

Competition Law (UCL). We have jurisdiction under 9 U.S.C. § 16, and we affirm.

We review de novo a district court's decision regarding the arbitrability of

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

claims, *see Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011), and a district court's interpretation of contracts, *see L.K. Comstock & Co., Inc v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989).

1.      Parties may delegate gateway questions of arbitrability to arbitration, but there must be "clear and unmistakable" evidence that they intend to do so. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). The rules of the American Arbitration Association (AAA) grant arbitrators the power to rule on their own jurisdiction. Emp. Arb. R. 7(a) (2025). We held in *Brennan v. Opus Bank* that an agreement can satisfy the clear-and-unmistakable requirement for arbitrating arbitrability by incorporating the AAA rules into the agreement. 796 F.3d 1125, 1130 (9th Cir. 2015). But the initial determination of whether and how an agreement incorporates those AAA rules, including whether an agreement incorporates the rules as to all or only some of its provisions, remains a question of state law. *See First Options*, 514 U.S. at 944; *Mondragon v. Sunrun, Inc.*, 101 Cal. App. 5th 592, 602 (2024).

The text of the Agreement does not encompass a provision regarding how to handle disputes about the Agreement itself. Relying on *Brennan*, Kelly Services argues that Section Four of the Agreement clearly and unmistakably incorporates

2                                                      24-6529

the AAA rules to Ruiz's UCL claim. But unlike the arbitration clause in *Brennan*, where the parties agreed to arbitrate "any controversy or claim" arising from the employment agreement that included the arbitration clause, 796 F.3d at 1128, the separate Agreement here contains no terms regarding arbitration of issues concerning the Agreement's "interpretation, applicability, enforceability, or formation." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 65 (2010) (holding that delegation provision was valid where it delegated exclusive authority to resolve any disputes regarding these four issues). Instead, the Agreement specifies that "Covered Claims" are arbitrable but says nothing about threshold questions related to the Agreement itself. It is therefore, at the very least, unclear whether the AAA rules would apply to third-order issues such as arbitrability, as the Agreement does not contemplate them in the first place. *First Options*, 514 U.S. at 943 ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter"); *PV Little Italy, LLC v. MetroWork Condo. Ass'n*, 210 Cal. App. 4th 132, 145 (2012) (parties' intent should be ascertained from the writing alone when possible).

The structure of the Agreement confirms this reading of the text. After (1) the "Agreement to Arbitrate" section, the Agreement proceeds to specify (2) the "Covered Claims" subject to arbitration, then specifies (3) the "Exclusions from [the] Agreement" to arbitrate. Only then does a separate section (4) "Arbitration

Rules" provide that the AAA rules "will apply" to "Arbitration under this Agreement." This structure mirrors that in *Mondragon*, where the California Court of Appeal found no clear delegation when AAA rules appeared after provisions defining and exempting claims. *Mondragon*, 101 Cal. App. 5th at 608–10 (explaining that "[t]he 'Arbitration Procedures' section states the parties will use the AAA rules 'for arbitration.' Had the agreement stated the arbitrator would decide all disputes regarding the scope of the arbitration agreement, the analysis might be different."). By incorporating the AAA rules in Section Four—after Sections Two and Three define and exclude which types of claims are subject to arbitration under the Agreement—the structure of the Agreement suggests the rules apply only to the universe of "Covered Claims," not to any initial disputes about who decides the scope of arbitration. Again, this is distinct from the clear agreement to arbitrate "any controversy or claim arising out of this Agreement" in *Brennan*. 796 F.3d at 1128.

Under state contract law, the text and structure of the Agreement may be reasonably read to incorporate the AAA rules only as to a previously defined set of substantive claims, and not to any matter that may arise out of the Agreement. *See Mondragon*, 101 Cal. App. 5th at 608–10. Thus, under federal arbitration law, the Agreement's incorporation of the AAA rules does not clearly and unmistakably delegate threshold questions of whether a particular claim is arbitrable in the first

place. *First Options*, 514 U.S. at 944.

2.      Section Three of the Agreement exempts Ruiz's statutory UCL claim from arbitration. The phrase "unfair competition claims" contains no limiting language and naturally encompasses all forms of unfair competition claims. *See Heidlebaugh v. Miller*, 126 Cal. App. 2d 35, 37 (1954) ("[W]ords . . . must be ascertained solely from a common-sense meaning of them as a whole," and courts must "not insert what has been omitted, or . . . omit what has been inserted."). Conversely, the Agreement uses "common-law" and "statutory" where the parties intended those distinctions. If the parties wanted to limit "unfair competition claims" to only its common-law meaning, they would have said so. *See Wildlife Alive v. Chickering*, 18 Cal. 3d 190, 196 (1976), *superseded by statute on other grounds*.

3.      By its express terms, Section Eight's class waiver applies only to "claims subject to this agreement"—that is, the arbitrable claims defined in Section Two, not those excluded in Section Three. Interpreting the waiver as extending to excluded claims would render this limiting phrase superfluous. *See Remedial Const. Servs., LP v. AECOM, Inc.*, 65 Cal. App. 5th 658, 663 (2021). Even if we were to find that the language was ambiguous, the best reading of the Agreement as a whole establishes that the provision was intended only to cover class and collective claims in arbitration.  Therefore, the class waiver does not apply to

Ruiz's UCL claim.

**AFFIRMED.**[1]

---

[1] Appellant's motion for judicial notice (Dkt. No. 24) is DENIED.

No. 24-6529, *Ruiz v. Kelly Services Global, LLC*
Bumatay, J., dissenting:

Paul Ruiz worked briefly as a temporary employee for Kelly Services, completing a single placement at E. & J. Gallo Winery that lasted about two and a half months, from December 2022 to March 2023. As part of Kelly's standard electronic onboarding process, Ruiz was presented with an arbitration agreement and signed it before starting that assignment.

1. The agreement expressly assigns threshold questions of arbitrability to the arbitrator, not the district court. Because the parties agreed that an arbitrator would decide whether a particular dispute must be arbitrated, the district court was not permitted to determine for itself whether Ruiz's Unfair Competition Law claim falls within the agreement's scope. We should reverse the denial of Kelly Services' motion to compel arbitration and leave the gateway question to the forum the parties selected.

Our decision in *Brennan v. Opus Bank* governs this case. There, we held that when an agreement incorporates the rules of the American Arbitration Association ("AAA"), that is "clear and unmistakable evidence" that the parties agreed to have the arbitrator decide questions about the scope of arbitration. 796 F.3d 1125, 1130 (9th Cir. 2015). The arbitration agreement here does exactly what *Brennan* requires. It states that "[t]he employment dispute resolution rules of the American Arbitration Association ('AAA') effective at the time of filing will apply." The

incorporated AAA rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Under *Brennan*, that ends the inquiry.

Nothing in *Brennan* suggests that this result depends on where the AAA rules appear within the agreement, or that the delegation becomes unclear simply because the agreement also lists which claims are included or excluded. Parties often describe the scope of arbitration and assign responsibility for determining that scope in the same contract. Doing both does not create ambiguity.

Notwithstanding the arbitration agreement's plain text and *Brennan*, the majority reaches a different conclusion based on a formalistic sequencing theory— that because the agreement first describes "Covered Claims" and later refers to the AAA rules, the arbitrator's authority applies only after a court has already decided whether a claim is covered. But that's not how contracts operate. Deciding whether a claim falls within the definition of "Covered Claims" is itself a threshold question of arbitrability. By incorporating the AAA rules without limitation, the agreement assigns that task to the arbitrator. Focusing on the placement of a clause rather than its substance invites courts to decide precisely the preliminary questions the parties agreed to leave to arbitration.

And *Mondragon v. Sunrun, Inc.*, 101 Cal. App. 5th 592 (2024) doesn't change this. In that case, the California court found that conditional language in the incorporation clause made the reference to the AAA rules ambiguous. *Id.* at 606. Rather than plainly stating that AAA rules "will apply," as here, the Mondragon contract went on to say that those rules "explain how to file a Demand for Arbitration." *Id.* The California court held that "[t]he provision thus suggests the primary purpose of incorporating the AAA rules is to establish applicable procedures where a party elects to initiate arbitration proceedings—not necessarily to answer the more 'arcane' question who decides questions of arbitrability." *Id.* The different contractual language in *Mondragon* and here makes all the difference.

2. The district court also relied on Ruiz's supposed lack of sophistication. But *Brennan* did not hold that delegation by incorporating the AAA rules works only for sophisticated parties. To the contrary, *Brennan* expressly declined to adopt a "sophistication" requirement as a prerequisite for finding clear delegation. 796 F.3d at 1131. The touchstone is the contract's text: whether the parties' intent to have the arbitrator decide gateway questions is "clear and unmistakable." That inquiry does not turn on a court's after-the-fact assessment of one party's education, job title, or familiarity with arbitration.

Making delegation depend on perceived sophistication would be unworkable and unfair. "Sophistication" is a sliding concept with no administrable

boundary. Courts would be invited to litigate side issues—how much arbitration experience a person had, whether they understood the AAA rules, or whether they clicked through quickly—before ever reaching the contract language the parties actually agreed to. And because those are fact-intensive disputes, the result would often be exactly what delegation is designed to avoid: extended, expensive threshold litigation over who decides the threshold issue. Contract enforcement cannot turn on such an indeterminate, post hoc inquiry.

Nor does the "clear and unmistakable" standard require proof that an employee actually read or mastered the incorporated rules. Parties commonly incorporate terms by reference and courts routinely enforce those incorporations when the reference is clear and the material is identified and available. The agreement here not only incorporates the AAA employment rules; it also tells the employee where to find them and makes them available "at all times." That is the relevant question: what the agreement says and what it provides, not whether a court believes the employee was likely to appreciate the downstream legal consequences.

Finally, the district court's approach is inconsistent with how delegation has been applied after *Brennan*. Since *Brennan*, this court and district courts within the circuit have repeatedly enforced delegation provisions, whether through AAA incorporation or equivalent language, in cases involving employees and consumers, not just commercial entities. That practice reflects the basic principle *Brennan*

articulated: when the contract clearly assigns the gateway decision to the arbitrator, courts must respect that allocation. Treating "lack of sophistication" as a free-standing basis to disregard clear delegation would create a carveout that *Brennan* rejected and would erode the predictability that contract law requires.

I respectfully dissent.