Filed 9/28/20  Cohen v. Mylife.com CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOSEPH COHEN, etc.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MYLIFE.COM, INC.,<br><br>    Defendant and Appellant. | D076067<br><br><br>(Super. Ct. No. 37-2018-00060911-CU-BT-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfiel, Judge.  Reversed and remanded with directions.

Morrison & Foerster, Mark C. Zebrowski, and Benjamin S. Kagel for Defendant and Appellant.

Schonbrun Seplow Harris & Hoffman, Helen I. Zeldes, Ben Travis, and Paul L. Hoffman for Plaintiff and Respondent.


This is an appeal from an order denying the renewed motion of defendant MyLife.com, Inc. (Defendant), to compel arbitration of the first amended complaint (complaint) in the underlying lawsuit filed by plaintiff Joseph Cohen (Plaintiff), on behalf of himself and all others similarly

situated. The trial court declined to enforce the arbitration provision in the parties' contract, ruling that it is void.

Because the parties "clearly and unmistakably" agreed that *the arbitrator*, not the court, is to determine questions of arbitrability, we reverse and remand with directions to grant Defendant's motion. As a result, we do not decide whether the arbitration provision is void, leaving that and related issues for the arbitrator to decide in the first instance, pursuant to the parties' agreement.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

According to Defendant, through its website, MyLife.com, Defendant provides online services that allow people "to understand and manage the information that is available in the public domain about them." Defendant obtains this information from third-party sources and organizes it into a "profile." Anyone who conducts a " 'name search' " is able to view the information in a person's profile for free; whereas those who pay a membership fee have access to more detailed information, as well as the ability to manage the information in their profiles.

Defendant provides its services pursuant to the terms of a user agreement (User Agreement) that is available on the home page and numerous subpages of the MyLife.com website and is accessible by clicking on a hyperlink. Anyone who uses Defendant's service is subject to the terms of the User Agreement; and, according to the terms of the User Agreement, a user accepts the agreement in one (or more) of three ways: accessing the

---

[1] In response to Plaintiff's complaint, Defendant filed a motion to compel arbitration. In support of and in opposition to the motion, the parties filed declarations. The facts recited in the text, *post*, are based on the evidence contained in the declarations or allegations contained in the complaint.

2

MyLife.com website "in any manner"; completing the registration or signing in process; or subscribing to a paid membership.

In the complaint, Plaintiff alleges generally that "Defendant places false and misleading incendiary information in [consumers'] profiles" that harms consumers' reputations and, more specifically, that *his* profile contained such information. As a result, Plaintiff seeks "public injunctive relief" under the state's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) and the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) and individual relief for fraud and rescission of contract. According to his appellate brief, by these claims, Plaintiff wants "to stop Defendant from publishing false and reckless information about individuals."

In response to the complaint, Defendant filed a renewed motion to compel arbitration or, in the alternative, to stay the proceedings.[2] Defendant based the motion on an arbitration provision (Arbitration Provision) in the User Agreement that Plaintiff entered into with Defendant. The Arbitration Provision is found at section I.7. of the User Agreement and provides, in part, that the parties "agree to arbitrate all disputes and claims arising out of or relating to this [User] Agreement between [Defendant] and [Plaintiff]." The Arbitration Provision also contains language that delegates to the arbitrator all issues to be decided (Delegation Clause). In part the Delegation Clause provides: *"All issues are for the arbitrator to decide, including the scope of this arbitration clause*[.]" (Italics added.) In part, the Delegation Clause also incorporates the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes of the American

---

[2] The parties do not tell us anything about a prior motion to compel arbitration.

Arbitration Association (AAA Rules), which expressly give the arbitrator the authority to determine threshold issues of arbitrability.[3] Pursuant to the Delegation Clause, Defendant argued to the trial court that issues of arbitrability are for the arbitrator, *not the court*, to decide.

Plaintiff opposed the motion on the following grounds:  the User Agreement is void; no agreement exists between the parties; the Arbitration Provision is invalid; the Delegation Clause does not apply to the determination of arbitrability (leaving that issue to the court); and the User Agreement is unconscionable.

Defendant filed a reply, relying on the Delegation Clause and the argument that, by entering into the User Agreement—which contains the Delegation Clause nested within the Arbitration Provision—the parties

---

[3]     Rule R-8 of the AAA Rules is entitled "Jurisdiction" (Rule R-8) and provides in relevant part:  "(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.  [¶]  (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause." (<https://www.adr.org/sites/default/files/Commercial_Dispute_Resolution_Procedures-Amended.pdf> [as of Sept. 28, 2020], archived at <https://perma.cc/2MNH-K5FN>.)

Defendant does not cite to Rule R-8, instead relying on rule R-7 of the AAA's "Commercial Arbitration Rules and Mediation Procedures."  We note that this rule R-7 of the Commercial Arbitration Rules and Mediation Procedures (also entitled "Jurisdiction") is almost verbatim the same as rule R-8 of the AAA Rules, quoted in the immediately preceding paragraph. (<https://www.adr.org/sites/default/files/CommercialRules_Web.pdf> [as of Sept. 28, 2020], archived at <https://perma.cc/4BJD-ZBKM>.)

4

agreed to have the arbitrator, not the court, determine *all issues*, including the arbitrability of Plaintiff's claims.

At the hearing, the court confirmed its tentative ruling and denied Defendant's motion. As relevant to the principal issue we decide in this opinion, the court concluded that because the Delegation Clause did not "clear[ly] and unmistakab[ly]" delegate threshold arbitrability questions to the arbitrator, the court was required to determine them. Following that ruling, the court decided the issue of arbitrability, concluding that the Arbitration Provision was void and unenforceable because it contained language that contravened California public policy (i.e., the statutory right to public injunctive relief). (Citing *McGill v. Citibank, N.A.* (2017) 2 Cal. 5th 945 and *Roberts v. AT&T Mobility LLC* (N.D.Cal., Mar. 14, 2018, No. 15-CV-03418-EMC) 2018 WL 1317346[4].)

Defendant timely appealed. (Code Civ. Proc., § 1294, subd. (a).)

## II. DISCUSSION

On appeal, Defendant argues that the Delegation Clause "clearly and unmistakably" delegates issues of arbitrability to the arbitrator and that no contract defenses to the Delegation Clause apply. As we explain, we agree.

There is no uniform standard for reviewing an order denying a motion to compel arbitration. (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317.) " ' " ' "If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citation.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." ' " ' " (*Ibid.*) "Where, as here, the language of the

[4]    The court of appeals affirmed the district court's order in an unpublished memorandum filed after completion of briefing in this appeal. (*Roberts v. AT&T Mobility LLC* (9th Cir. 2020) 801 Fed.Appx. 492.)

arbitration agreement is not in dispute and the [trial court's] arbitrability determination was not based on the credibility of extrinsic evidence, the applicable standard [of review] is de novo." (*Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 543-544.)

The party seeking arbitration (here, Defendant) bears the burden of proving the existence of an arbitration agreement, whereas the party seeking to avoid arbitration (here, Plaintiff) bears the burden of establishing a defense to its enforcement. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890 (*Aanderud*).)

A.     *The Federal Arbitration Act, not the California Arbitration Act, Applies*

As a preliminary issue, we must determine whether the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) or the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) applies to the issues on appeal.

Plaintiff contends that the state act applies because, pursuant to section II.16. of the User Agreement,[5] the parties agreed that the User Agreement "is governed by the laws of the State of California, U.S.A., without regard to its conflicts of law provisions." Defendant, by contrast, contends that the FAA applies because the User Agreement governs internet or online services, which involve interstate commerce.[6] Defendant has the better position.

---

[5]     Section II.16. is part of the User Agreement's terms of service for subscription (also known as premium) membership.

[6]     In its order denying Defendant's motion, the trial court cited evidence and expressly found that "Defendant is in the business of facilitating internet related searches of individual background information" and that "Defendant's

6

" 'The FAA applies when the contract [containing the arbitration provision] "evidences a transaction involving interstate commerce." ' " (*Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.* (2019) 44 Cal.App.5th 834, 840.) In this context, "the word 'involving' is broad and is indeed the functional equivalent of 'affecting' " interstate commerce. (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 273-274.) Because "use of the internet is intimately related to interstate commerce" (*United States v. Sutcliffe* (9th Cir. 2007) 505 F.3d 944, 952), Defendant's online services provided over the internet, through the MyLife.com website and User Agreement, involve or affect interstate commerce. Therefore, the FAA applies. (*Philadelphia Indemnity Ins. Co.*, at p. 840; see 9 U.S.C. § 2.)

Plaintiff's reliance on a general choice of law provision (User Agreement, § II.16.) in an application of the Arbitration Provision (User Agreement, § I.7.) is misplaced. First, to the extent California law would contradict the parties' agreement "to arbitrate all disputes and claims" here, "a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." (*Sovak v. Chugai Pharmaceutical Co.* (9th Cir. 2002) 280 F.3d 1266, 1270; accord, *Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.* (2007) 152 Cal.App.4th 1522, 1535.) For this reason, "we will interpret the choice-of-law clause as simply supplying state substantive, decisional law, and not state law rules for arbitration." (*Sovak*, at p. 1270.)

Because the authorities on which Plaintiff relies are materially distinguishable, he does not convince us otherwise. In both *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468 and *Mastick v. TD*

---

business operations are interstate in nature[.]" This finding is supported by substantial evidence, and Plaintiff does not challenge it in any event.

*Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, California law was applied because there were parties to the litigation that were not parties to the contract containing the arbitration provision. (*Volt*, at pp. 475-477; *Mastick*, at p. 1264.) Here, both parties to the litigation are parties to the User Agreement, which contains the Arbitration Provision.

B.   *The Delegation Clause, by Which the Arbitrator Determines Threshold Issues of Arbitrability, is Enforceable*

"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) This statute "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 (*Moses H. Cone*); accord, *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*).) "California law, like federal law, favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*), abrogated in part on another ground in *Concepcion*, at pp. 339-340; accord, *Aanderud, supra*, 13 Cal.App.5th at p. 889.)

As a result of this " 'strong public policy in favor of arbitration[,] . . . any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.' " (*Aanderud, supra*, 13 Cal.App.5th at p. 890; accord, *Moses H. Cone, supra*, 461 U.S. at pp. 24-25 [the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"].) This policy does not come into play, however, until after a court has found the parties agreed to arbitrate their

dispute. (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 701 (*Metters*).) That is because " ' "[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." ' " (*Ibid.*)

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." (*Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) __ U.S. __, __ [139 S.Ct. 524, 527 (*Henry Schein*), citing *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68-70 (*Rent-A-Center*); see *Rent-A-Center*, at pp. 69-70 ["parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943-944 (*First Options*).) In the event "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract"; under such circumstances, "a court possesses no power to decide the arbitrability issue." (*Henry Schein,* at p. __ [139 S.Ct.at p. 529].)

If the parties dispute the threshold or gateway question of arbitrability—i.e., "whether their arbitration agreement applies to the particular dispute"—then "the question of who decides arbitrability is itself a question of contract." (*Henry Schein, supra*, __ at p. __ [139 S.Ct.at p. 527].) The court determines the answer to that question. (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84 [courts decide " 'question[s] of arbitrability' "] (*Howsam*); see 9 U.S.C. § 4.)

In cases subject to the FAA, when deciding whether the parties agreed to arbitrate a particular dispute, including arbitrability, courts "should apply ordinary state-law principles that govern the formation of contracts." (*First Options, supra*, 514 U.S. at p. 944; accord, *Wagner v. Stratton Oakmont, Inc.*

9

(9th Cir. 1996) 83 F.3d 1046, 1049 ["We interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."].)  As a general rule, relevant state law requires the court to determine whether the parties objectively intended to submit the issue to arbitration.  (*First Options*, at p. 944.)

Where, as here, the issue is arbitrability, the court does not look to the contract as a whole; the only question is whether, under state law, the parties knowingly *agreed to arbitrate issues of arbitrability* under the contract. (*Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 403-404.)  Challenges to the validity of the underlying contract (e.g., fraud in the inducement, ambiguity, lack of consideration, mutual mistake, unconscionability) are not considered at this stage.  (*Ibid*.)

Where, as here, the parties' agreement (User Agreement) contains an agreement to arbitrate (Arbitration Provision) that contains a term delegating issues of arbitrability to the arbitrator (Delegation Clause), we must determine whether the Delegation Clause is enforceable.  (*Aanderud*, *supra*, 13 Cal.App.5th at p. 891.)  Here, because there is no dispute about the *existence* of the Arbitration Provision, Plaintiff bears the burden of establishing a defense to its *enforcement*, including first the Delegation Clause.  (*Id.* at p. 890; see *Pinnacle*, *supra*, 55 Cal.4th at p. 236.)

We defer the question of arbitrability to the arbitrator only where " 'there is clear and unmistakable evidence' " that the parties intended to delegate this determination.  (*Henry Schein*, *supra*, __ U.S. at p. __ [139 S.Ct. at p. 531], quoting *First Options*, *supra*, 514 U.S. at p. 944; accord, *Rent-A-Center*, *supra*, 561 U.S. at p. 69, fn. 1; *Howsam*, *supra*, 537 U.S. at p. 83;

*Aanderud*, *supra*, 13 Cal.App.5th at p. 893.) "The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." (*Aanderud*, at p. 892.) For a delegation clause to be enforceable, there are " 'two prerequisites' ": (1) " 'the language of the clause must be clear and unmistakable' "; and (2) " 'the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability.' " (*Ibid*.)

    1.     *The Language of the Delegation Clause is Clear and Unmistakable*

The Delegation Clause at issue in this appeal provides in full:

> "The arbitration shall be governed by the Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA'), as modified by this Agreement, and shall be administered by the AAA. All issues are for the arbitrator to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Agreement. A judgment upon the award entered by the arbitrator may be entered in any court having jurisdiction thereof."[7]

Plaintiff contends that, because this language " 'is silent regarding the determination of enforceability . . . , it is presumed th[e] Court determines the issue or arbitrability.' "

Consistently, Plaintiff attempts to distinguish many of the authorities on which Defendant relies on the basis that, in those cases, the applicable provision expressly delegated to the arbitrator determinations of the "*enforceability*" or the "*validity*" of the arbitration agreement at issue (italics

---

[7]     Defendant tells us that this language, contained within the Arbitration Provision, is the Delegation Clause "in full." Although Plaintiff focuses on one sentence in particular ("All issues are for the arbitrator to decide . . . ."), he does not argue otherwise.

11

added). (See *Aanderud*, *supra*, 13 Cal.App.5th at p. 892 [" 'validity, or enforceability' "]; *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 ["enforceability"]; *Taylor v. Shutterfly, Inc.* (N.D. Cal., Sept. 11, 2018, No. 18-CV-00266-BLF) 2018 WL 4334770, at *3 ["enforceability"]; *Olivas v. Hertz Corp.* (S.D. Cal. Mar. 12, 2018, No. 17-CV-01083-BAS-NLS) 2018 WL 1306422, at *10 ["validity"].) Plaintiff's attempt to distinguish those cases is misplaced, however, because there is no authority that requires an enforceable delegation clause to affirmatively mention or to specifically reference or incorporate the issues of arbitrability, enforceability, or validity of the arbitration agreement. To the contrary, as we explained *ante*, for a delegation clause to be enforceable, the " 'two prerequisites' " are that the language of the clause " 'be clear and unmistakable' " and that the delegation not be " 'revocable under state contract defenses.' " (*Aanderud*, *supra*, 13 Cal.App.5th at p. 892.)

By the Delegation Clause here, the parties clearly and unmistakably agreed to delegate to the arbitrator "[a]*ll issues . . .* , including the scope of this arbitration clause"—which necessarily includes the issue of arbitrability. (Italics added.) In addition, by the Delegation Clause here, the parties also clearly and unmistakably agreed to incorporate the AAA Rules, which expressly provide that the arbitrator will decide "his or her own jurisdiction, including any objections with respect to *the existence, scope or validity of the arbitration agreement.*"[8] (Rule R-8, italics added; see fn. 3, *ante*.)

---

[8] We acknowledge, as Plaintiff points out, that Rule R-8 does not delegate to the arbitrator *exclusive* authority to determine arbitrability. Nonetheless, it is additional evidence that, contrary to Plaintiff's principal argument (and the ruling of the trial court), the Delegation Clause is not silent on issues related to arbitrability. It evidences the parties' intent that the arbitrator, not the court, decide such issues.

12

Plaintiff contends that the parties' incorporation of the AAA Rules (and, presumably, Rule R-8 in particular) "is insufficient to establish delegation in consumer contracts involving at least one unsophisticated party."[9] (Citing *Eiess v. USAA Federal Savings Bank* (N.D. Cal. 2019) 404 F.Supp.3d 1240, 1253 (*Eiess*).[10]) We express no opinion on this issue, since the record in this case contains no evidence, either way, regarding Plaintiff's sophistication.

Plaintiff suggests that *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771 (*Ajamian*) is "instructive." However, based on the differences between the parties' agreement in *Ajamian* and in the present case, *Ajamian* supports the contention that the parties here clearly and unmistakably delegated to the arbitrator the issue of arbitrability. In *Ajamian*, the parties agreed to resolve by arbitration "[a]*ny* disputes, differences or controversies" in an employment agreement between the

---

[9] We infer from Plaintiff's argument and the authorities he cites (e.g., *Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1125; *Galilea, LLC v. AGCS Marine Ins. Co.* (9th Cir. 2018) 879 F.3d 1052, 1062; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547) that, *absent a showing* of at least one unsophisticated party, incorporation of arbitration rules in which the arbitrator is delegated the responsibility of determining issues of arbitrability *is* sufficient evidence of a clear and unmistakable delegation.

[10] *Eiess* suggests that the defendant, as the moving party, is required to present "evidence that [the plaintiff] possesses a heightened level of sophistication." (*Eiess*, *supra*, 404 F.Supp.3d at p. 1254.) However, the moving party is required only to establish the existence of an arbitration agreement; after that, the party opposing arbitration has the burden of establishing a defense to any delegation clause (*Pinnacle*, *supra*, 55 Cal.4th at p. 236; *Aanderud*, *supra*, 13 Cal.App.5th at p. 890), which would be the time to present evidence of the parties' sophistication. Plaintiff did not do so here.

plaintiff and her employer. (*Id*. at p. 783, italics added.) The court concluded that this language was ambiguous: It could cover *all* disputes, differences or controversies including arbitrability; or it could be limited to "*substantive* disputes, claims or controversies." (*Id*. at p. 783.) The agreement contained further ambiguity as to the scope of the arbitrator's powers in that it delegated to "a 'court of competent jurisdiction' " the authority to determine whether a specific covenant in the agreement was impermissibly broad. (*Id*. at p. 792.) Since, under this delegation of power, the parties agreed that the court could limit the scope of the covenant, such an agreement was inconsistent with the argument that the parties intended that *all* disputes be decided by the arbitrator. (*Id*. at p. 793.) In contrast, here the parties agreed that the arbitrator would decide "[*a*]*ll issues*" without limitation—"*including the scope of this arbitration clause*." (Italics added.)

For the foregoing reasons, the parties clearly and unmistakably agreed to delegate to the arbitrator all questions regarding the arbitrability of the User Agreement.

2.    *The Delegation Clause is Not Unconscionable*

Even where the parties clearly and unmistakably agree to delegate issues of arbitrability to the arbitrator, " 'the delegation must not be revocable under state contract defenses such as . . . unconscionability.' " (*Aanderud, supra*, 13 Cal.App.5th at p. 892.) In this regard, Plaintiff argues that the Delegation Clause is "void due to the contract defense of unconscionability." Plaintiff, as "the party opposing arbitration[,] bears the burden of proving . . . unconscionability." (*Pinnacle, supra*, 55 Cal.4th at p. 236.)

State law applicable to contracts generally governs whether a valid arbitration agreement exists. (*Perry v. Thomas* (1987) 482 U.S. 483, 492, fn. 9; *Metters, supra*, 161 Cal.App.4th at p. 701.) As will be outcome

14

determinative in this appeal, "[w]hen determining whether a delegation clause is unconscionable, any claim of unconscionability must be *specific to the delegation clause*." (*Aanderud*, *supra*, 13 Cal.App.5th at p. 895, italics added; *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1109 (*Nielsen Contracting*) [court resolves challenge to a delegation clause only "when a specific contract challenge is made to the delegation clause"].)  In *Rent-A-Center*, *supra*, 561 U.S. 63, for example, because, in the trial court, "none of [the] substantive unconscionability challenges was specific to the delegation provision," the Supreme Court did not reach the merits of the argument that the arbitration provision was unconscionable.  (*Id.* at pp.73, 75-76.)].)

Thus, as potentially applicable to the contract at issue in the present appeal, California state law provides in relevant part:  "If the court as a matter of law finds *the . . .* [*Delegation C*]*lause* of the contract to have been unconscionable at the time it was made the court may refuse to enforce the [User Agreement], or it may enforce the remainder of the [User Agreement] without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  (Civ. Code, § 1670.5, subd. (a), italics added; see *Armendariz*, *supra*, 24 Cal.4th at p. 114.)

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results."  (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)  " 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a . . . clause under the doctrine of unconscionability.' "  (*Ibid.*, italics added.)  However, the two types

15

of unconscionability "need not be present in the same degree[:] . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Ibid.*) In application, "by the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim." (*Ajamian, supra,* 203 Cal.App.4th at p. 795.)

Here, with regard to substantive unconscionability, Plaintiff relies on the following two arguments:

- "the provisions in the *User Agreement* [*A*]*rbitration* [*P*]*rovision* that deny Plaintiff a right to public injunctive relief are the exact type of provisions that are substantively unconscionable under California law, as it denies Plaintiff *any forum* for him to seek to enforce his statutory rights" (initial italics added); and

- "the *User Agreement* contains a clause that states in part, 'We may modify any of the terms and conditions contained in this [User] Agreement at any time in our sole discretion. The updates and all changes will be posted at mylife.com/user-agreement.' " (Italics added.)

Since neither of these unconscionability challenges is *specific to the Delegation Clause*, however, Plaintiff has not presented for our consideration any claim of substantive unconscionability. (*Rent-A-Center, supra,* 561 U.S. at pp. 72 ["unless [the party opposing the delegation] challenged the delegation provision specifically, we must treat it as valid"], 73 ["we need not consider that claim because none of [the party's] substantive unconscionability challenges was specific to the delegation provision"]; *Aanderud, supra,* 13 Cal.App.5th at p. 895 ["any claim of unconscionability must be specific to the delegation clause"]; *Nielsen Contracting, supra,* 22

16

Cal.App.5th at p. 1108 ["an argument that the arbitration agreement or the underlying contract is unenforceable is not sufficient to trigger the court's obligation to resolve contentions regarding the enforceability of a severable delegation clause"].)

Plaintiff argues that, because the *User Agreement* (at § II.10.) grants Defendant the sole discretion to modify the terms and conditions of the agreement, the *Delegation Clause* (at § I.7.) is unconscionable. However, Plaintiff has forfeited appellate consideration of s argument, since he did not raise it in the trial court. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 [" 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' "].) More to the point, in *Rent-A-Center*, *supra*, 561 U.S. 63, the party arguing that an arbitration agreement was unconscionable "did not contest the validity of the delegation provision *in particular*" until the appeal to the Supreme Court. (*Id.* at p. 74, italics added.) Because "[h]e brought this challenge to the delegation provision too late," "he forfeited" it. (*Id.* at pp. 75-76 & fn. 5.)

In any event, even if we assume that the modification provision (§ II.10.) is unconscionable, that does not make the Delegation Clause (§ I.7.) unconscionable.

In *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, the lone authority on which Plaintiff relies, the provision allowing for unilateral modifications by the employer was contained *in the arbitration provision itself*, and allowed the employer to "modify or terminate any and all dispute resolution agreements with its employees unilaterally." (*Id.* at p. 1179.) In contrast, here, the provision allowing for unilateral modifications is contained

17

in an entirely separate section of the User Agreement and does not mention the Delegation Clause.  Thus, Plaintiff's challenge is not to the unconscionability of the Delegation Clause (§ I.7.) but rather to the unconscionability of the modification provision (§ II.10.).

Moreover, "the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 16 [employment security policy].)  As this requirement of fairness and reasonable notice applies in the context of an agreement to arbitrate disputes, "the unilateral right to modify the arbitration agreement[, including a delegation provision,] is restricted by the implied covenant of good faith and fair dealing." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 708, fn. 7.)  More specifically, pursuant to this restriction, "implied in the unilateral right to modify [a delegation clause nested in an arbitration provision] is the accompanying obligation to do so upon reasonable and fair notice." (*Id.* at p. 708.)  For this reason, therefore, had we reached the merits of Plaintiff's untimely argument, because "the implied covenant of good faith and fair dealing limits [Defendant's] authority to unilaterally modify the arbitration agreement" (*ibid.*), we would have had little difficulty concluding that an application of the implied covenant to the modification provision (§ II.10.) would preclude the Delegation Clause (§ I.7.) from being substantively unconscionable on its face under California law.

Accordingly, even without considering Plaintiff's claim of procedural unconscionability, Plaintiff has not met his burden of proving that the Delegation Clause is unconscionable.

3.    *Conclusion*

Because the language of the Delegation Clause is clear, unmistakable, and not unconscionable, it is enforceable.  (*Aanderud, supra*, 13 Cal.App.5th at p. 892.)  The trial court erred in concluding otherwise.

Thus, the arbitrator shall determine all issues of arbitrability; and for this reason, we do not reach—and, thus, express no opinion on—Plaintiff's argument that the Arbitration Provision is void.

## III.    DISPOSITION

The order denying Defendant's renewed motion to compel arbitration of Plaintiff's first amended complaint is reversed.  The matter is remanded with directions to grant the motion and to either stay or dismiss the action, as requested in the renewed motion.  Defendant is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.

19